**UNITED STATES of America,
Plaintiff,**

v.

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

**No. CR 05–07–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

Sept. 18, 2006.

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, William W. Mercer, Office of the U.S. Attorney, Billings, MT, Thomas L. Sansonetti, David M. Uhlmann, U.S. Department of Justice, Washington, DC, for Plaintiff.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, James T. Parkinson, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen R. Spivack, Bradley Arant Rose & White, Washington, D.C., David E. Roth, Bradley Arant Rose & White LLP, Birmingham, AL, for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

Defendants move to exclude expert opinions regarding "imminent danger" based upon risk assessments created by EPA in its CERCLA investigations at Libby beginning in 1999. Defendants maintain that the risk assessments are irrelevant to the Clean Air Act charges. The government opposes the motion, contending that the assessments are relevant not only to the Clean Air Act counts, but also to the obstruction and conspiracy counts of the indictment.

### II. Background

In association with its CERCLA cleanup efforts, EPA engaged in efforts to assess the risk to human health posed by asbestos contamination in Libby. To that end, sampling was performed at various locations in and around the town. This sampling, along with historical sampling and testing conducted by W.R. Grace and the results of health studies, were used by EPA experts to make preliminary risk assessments regarding exposure to Libby amphibole. These risk assessments were performed with an eye towards assessing risk for the purposes of determining whether a CERCLA cleanup was warranted. Defendants claim that these risk assessments 1) are irrelevant to the CAA charges because the CERCLA risk standard and the "imminent danger" standard of § 7413(c)(5)(A) are not identical; 2) are likely to be prejudicial and confusing for the same reason and therefore should be excluded under Federal Rule of Evidence 403; and 3) were not full-blown risk assessments comporting with established EPA protocols, and also contain significant errors making them unreliable under the standard set out in *Daubert*.

### III. Analysis

#### A. Relevance

▆▆▆ That the analysis engaged in by EPA was labeled a risk assessment, and that this assessment was conducted in the context of making determinations about CERCLA, is without legal consequence. Just because risk was being assessed under the CERCLA standard does not mean, in the abstract, that conclusions about that risk could not support a determination of "imminent danger" under § 7413(c)(5)(A). The Defendants' contention that there is a "fit" or relevance problem is incorrect. The issue is whether the underlying data upon which the assessment was being made is admissible for the purpose of proving endangerment under § 7413(c)(5)(A). In its prior orders, this Court has ruled that evidence of or derived from non-ambient releases (Doc. 740), results from historical commercial and product testing conducted by Grace (Doc. 741), and evidence regarding soil sampling (Doc. 746) are inadmissible for the purpose of proving the asbestos fiber concentration levels in the charged § 7413(c)(5)(A) releases. To the extent that data of this nature forms the basis for the risk assessments performed by EPA, the assess-

ments and expert opinions based upon them fall within the ambit of these prior orders and are likewise inadmissible for that purpose. These orders, however, have also established that such evidence and opinion is admissible for the purposes of proving the obstruction and conspiracy counts of the indictment, and the information contained within the assessments would similarly be admissible as to those counts.

## B. Reliability

Defendants' reliability argument deserves attention. They claim that EPA did not use the scientifically accepted method for sampling and analyzing asbestos concentrations in mixed fiber environments when it conducted its sampling using the AHERA, ISO 10312, and NIOSH methods. Defendants and their experts maintain that sampling conducted using the EPA Level III method is acceptable in such environments, and that the methods used by EPA overestimate the amount of asbestos fibers present in the samples. In depositions taken in the CERCLA cost recovery action against Grace, Chris Weiss acknowledged that mistakes had been made in the risk calculations with respect to three of the simulated activity scenarios he had analyzed as part of what he termed the "screening" or "preliminary" risk assessments he had performed. These mistakes resulted in an overestimation of risk by up to three orders of magnitude for those scenarios. In addition, he conceded that the "preliminary" nature of the assessments meant that they were not as thorough as would be expected of a "final" assessment, nor were EPA established risk assessment protocols assiduously followed in their preparation. Weiss did not concede that the mistaken calculations or preliminary nature of the assessments makes them worthless for the purpose of

making claims about the risk posed by the contamination in Libby.

A risk assessment is the scientifically accepted method by which to make determinations about the risks associated with exposure to hazardous substances. This is not an instance in which the *Daubert* objection is focused on a novel or untested method that is disputed within the scientific community. Defendants' argument is that the reliability of the assessments is compromised due both to simple error and to departures from established protocols that occurred in their execution.

The government responds that full-blown risk assessments are not a required element of any of the crimes charged, and that the information contained in the risk memos reflecting the screening level assessments performed by Weiss and others is reliable enough to prevent exclusion under *Daubert*.

■ Experts' "unadorned assertions that the methodology they employed comports with scientific procedures" are not enough to satisfy the requirements of *Daubert*. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir.1995) ("*Daubert II* "). This is not the case in present instance. The methodology or protocols followed in the preliminary risk assessments or risk memos are not hidden or unexplained. Indeed, they appear to be well understood by the Defendants, as they have spent considerable energy in attempting to identify the shortcomings in them. These possible shortcomings, however, do not rise to the level of requiring the assessments' exclusion on the basis of their unreliability. The EPA risk assessors used the type of information and methods used by other risk assessors when performing risk assessments. Just because these methods are arguably not the best methods for use in the situation in Libby goes to the weight

of the evidence and testimony regarding the assessments, and is an issue more properly raised at trial.

## C.   Rule 403

Federal Rule of Evidence 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Defendants argue that the admission of the risk assessments prepared by EPA or expert opinion derived from those assessments are unfairly prejudicial and confusing and should be excluded under this rule.

■ The primary 403 argument raised by Defendants concerns what they describe as the large potential for confusion admission of the risk assessment evidence presents. Section 7413(c)(5)(A) imposes criminal liability upon release of a hazardous substance into the ambient air that is known to pose an "imminent danger of death or serious bodily injury." 42 U.S.C. The EPA risk assessments were conducted to ascertain risk within the context of its CERCLA investigations. The level of risk necessary to trigger a cleanup under CERCLA and the level of risk that must be proved to warrant a conviction under § 7413(c)(5)(A) are not equivalent. As such, Defendants maintain that any discussion of the risk assessments and their corresponding consequences might cause a jury to improperly infer that since EPA found a level of risk high enough to support a CERCLA cleanup, such a risk must be substantial enough to satisfy the knowing endangerment provisions of the CAA.

Defendants' concerns are understandable, but they are capable of being addressed by a limiting jury instruction. Differentiating between the different standards, even given the similarity of the terms in which they are expressed, is something of which a jury is capable.

## IV.   Order

For the foregoing reasons IT IS HEREBY ORDERED that Defendants' motion in limine to exclude expert opinions regarding "imminent danger" based upon EPA "risk assessments" is GRANTED with respect to such evidence offered for the purpose of proving a release under § 7413(c)(5)(A). It is DENIED with respect to such evidence offered for the purpose of proving other counts of the indictment.